IN THE DISTRICT COURT OF THE UNITED STATES
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Nathaniel Hallman, ) | |
| ) | Civil Action No. 6:10-2518-RMG-KFM |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT OF MAGISTRATE JUDGE** |
| ) | |
| Sheriff James Metts, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

The plaintiff, a federal prisoner proceeding *pro se*, brought this action seeking relief pursuant to Title 42, United States Code, Section 1983[1], alleging that while he was a detainee at the Lexington County Detention Center ("LCDC") his constitutional rights were violated. Specifically, he alleges denial of religious freedom and discrimination based upon religion. He also claims he was denied adequate and appropriate meals during Ramadan. The plaintiff names as defendants the Sheriff of Lexington County and several of his employees. He also names Trinity Services Group, Inc. (incorrectly identified as "Trinity Food Service") ("Trinity") and employee Mary Miley (incorrectly identified by the plaintiff as Ms. Molly) as defendants. Trinity provides food services at the LCDC.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d) DSC, this magistrate judge is authorized

---

[1] Defendants Ms. Miley and Trinity Services Group, Inc., presume in their motion for summary judgment that the plaintiff is proceeding under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). A Section 1983 suit challenges the constitutionality of the actions of state officials; a *Bivens* suit challenges the constitutionality of the actions of federal officials. Here, while the plaintiff is a federal inmate, his claims relate to his stay in the LCDC and are alleged against state officials. As Section 1983 and *Bivens* claims are analagous and courts generally apply Section 1983 law to *Bivens* cases, the analysis of the plaintiff's claims remains the same. *See Butz v. Economou*, 438 U.S. 478, 499-501 (1978).

to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

On May 16, 2011, defendants Ms. Miley and Trinity filed a motion to dismiss or, in the alternative, for summary judgment. On June 3, 2011, the remaining defendants filed their motion for summary judgment. On May 17 and June 6, 2011, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately.

On June 24, 2011, the plaintiff filed a motion to amend his complaint. This court denied that motion on July 7, 2011. As the plaintiff is proceeding *pro se*, the court filed an order on July 12, 2011, giving the plaintiff through August 1, 2011, to file his responses to the dispositive motions. Again, the plaintiff was specifically advised that if he failed to respond, this action would be dismissed for failure to prosecute. On August 1st, the plaintiff filed a "motion to show cause," arguing that officials at the LCDC did not provide him information on how to appeal his grievances.[2] On September 19, 2011, the plaintiff filed a motion for extension of time to file his response to the pending dispositive motions. This court granted this extension through October 12, 2011, but the plaintiff failed to file a timely response. Accordingly, the plaintiff has not responded to the defendants' arguments as to the merits of his claims.

## **FACTS PRESENTED**

Trinity is a private company contracted to provide food services to inmates confined at the LCDC. As Trinity's Unit Manager for the LCDC, Ms. Miley oversees the food service Trinity provides at the LCDC, but has no involvement or input with prescribing

---

[2] This was apparently in response to the defendants' argument that the plaintiff failed to exhaust his administrative remedies.

inmate diets, designing menus, or establishing meal schedules (Miley aff. ¶3). Among other tasks, Miley's responsibilities include ensuring that Trinity provides food service in a manner that complies with the Sheriff's food service and security policies and all pertinent government safety and sanitation regulations (*id.*). She also performs cost control, manages product inventory and generally supervises, but does not personally participate in, the actual preparation and distribution of inmate meals (*id.*).

The Sheriff is the final authority with respect to all services provided at the LCDC and effectively dictates the manner, method, and means by which Trinity fulfills its obligations (Miley aff. ¶ 4). Specifically, the Sheriff establishes the specifications for the menu for all meals that Trinity serves to the inmates, specifies meal times, and requires Trinity to modify the portion sizes and to substitute certain food items for inmates on medical and/or religious diets (*id.* ¶ 5).

Religious diets are available at the LCDC for inmates whose religious beliefs require adherence to specific dietary restrictions, but Trinity's employees are not authorized to prescribe religious diets (Miley aff. ¶ 6). Rather, the food service policies governing religious diet prescriptions require inmates to direct their religious dietary requests to the chaplain and Sheriff's staff for review and approval. Upon approval of an inmate's religious diet request, the chaplain and/or Sheriff's staff forwards the religious diet prescription to Trinity for implementation (*id.*). Based on the information received from the chaplain and/or Sheriff's staff, Trinity maintains a "diet roster" that identifies the inmates in each LCDC confinement unit with a religious diet prescription and the type of diet prescribed for each inmate (*id.* ¶ 7). Trinity determines what type of religious dietary modifications, if any, it must make to the meals it prepares for the LCDC inmates based on information contained in the diet roster, which is reviewed by Trinity staff prior to preparing any restricted diet meals (*id.*).

Dietary accommodations are also available for LCDC inmates during certain religious holiday seasons, like Ramadan, which is the holy month of fasting observed by traditional Muslims (Miley aff. ¶ 8). To participate in the program established by the LCDC administration for the observance of Ramadan, inmates are required to complete and submit a written request form acknowledging that, during their observance of Ramadan, they will not receive lunch meals (*id.*). Under the LCDC's Ramadan program, Trinity prepares only two meals per day for the inmates observing Ramadan, which consist of a morning breakfast meal served approximately 30 minutes prior to sunrise and an evening dinner meal served after sunset (*id.* ¶ 9). In order to compensate for the lunch meal that the inmates choose to forego during Ramadan, the LCDC requires Trinity to provide an additional half portion of each item included in the breakfast and dinner meals served to the inmates during Ramadan (*id.*). Trinity lacks authority to deviate from these policies and cannot provide inmates with any dietary accommodations for the observance of Ramadan absent express authorization from the LCDC administration (*id.*).

The plaintiff requested to be placed on a Kosher Diet in July 2010, and that request was approved (Sergeant Sheralet Taylor aff. ¶ 19, ex. A). He also requested to be placed on the list of inmates observing Ramadan, and that request was also approved (*id.* ¶ 20, ex. A).

During the time period relevant to the allegations in the plaintiff's amended complaint and continuing through the plaintiff's transfer out of the LCDC in or around September 2010, Trinity prepared meals for the plaintiff in accordance with a restricted religious diet prescribed for him that is commonly referred to as the Kosher Diet ("Kosher Diet") (Miley aff. ¶13). The Kosher Diet is generally prescribed as an accommodation for inmates whose religious beliefs require observance of certain dietary restrictions that are not satisfied under the unrestricted menu (*id.*). The meals Trinity prepared for the plaintiff

4

under the Kosher Diet followed an item specific two-day cycle menu that outlined three full meals per day consisting of breakfast, lunch, and dinner (*id.* ¶14). The Kosher Diet menu excluded pork and pork derivatives from all meals and specified that dairy products were not served in the same meal as meat, chicken or fish (*id.*). Except for eggs, fruits and vegetables and other items that are considered inherently Kosher, only foods certified by a recognized Orthodox Kosher standard with symbols such as "OU" (Union of Orthodox Jewish Congregations), "K" (Kosher) or "CRC" (Chicago Rabbinical Council) are served under the Kosher Diet (*id.*). The meals outlined under the Kosher Diet provide approximately 3,400 calories per day, which exceeds the approximately 2,500 daily calories recommended for a sedentary adult male of average build under the standards established by the National Academy of Sciences - National Research Council ("NAS-NRC"), which serve as the national standard for nutrient recommendations (*id.* ¶15).

During Ramadan in 2010, Trinity prepared enhanced Kosher Diet breakfast and dinner meals for the plaintiff in accordance with the Kosher Diet menu, the Ramadan meal schedule described above, and the policies governing the LCDC administration's Ramadan program (Miley aff. ¶17). Although the LCDC inmates (including the plaintiff) observing Ramadan in 2010 did not receive lunch meals during Ramadan, the inmates received more than adequate daily nutrition because they received an additional half portion of each items included in their breakfast and dinner meal (*id.*). Specifically, the one and a half size portions of the Kosher Diet breakfast and dinner meals that Trinity prepared during Ramadan 2010 provided approximately 3,400 calories per day (*id.*).

Inmates are advised when they first arrive at the LCDC to alert the LCDC correctional officers on duty of any problems with their meals at the time they receive them (Miley aff. ¶18). Upon receiving notification from an inmate of deficiencies and/or discrepancies that were somehow not previously detected, an effort is made to correct the

problem or to provide an alternative accommodation for the inmate during the same meal period to the extent possible. If the inmate fails to take the initiative in this regard, however, he impedes the ability of the LCDC staff and Trinity to rectify the situation during the meal period (*id.*).

Ms. Miley is unaware of any complaints submitted by the plaintiff during the 2010 Ramadan period concerning alleged deficiencies or discrepancies with his Kosher Diet meals and did not learn about his complaints until she received a copy of the amended complaint (Miley aff. ¶19). To the best of Ms. Miley's knowledge, information and belief, each of the meals Trinity prepared for the plaintiff during Ramadan 2010 complied with the Kosher Diet menu and policies governing the LCDC Ramadan program in all respects prior to leaving Trinity's possession, custody, and control (*id.* ¶20). Further, Ms. Miley did not locate any document indicating that she ever received notification about any purported discrepancies in the meals prepared for the plaintiff during Ramadan in 2010 (*id.*).

During his incarceration at LCDC, the plaintiff was primarily housed in Echo pod, which is an open pod. Echo pod accords the inmates housed therein a good amount of freedom of movement within the housing area. Only male inmates are housed in Echo pod. It is equipped with a dormitory style bathroom, and there are no partitions in that bathroom. The lack of partitions addresses a security issue, as the staff of LCDC need to be able to see what the inmates are doing. However, the officers that work in Echo pod do not normally enter the bathrooms while the inmates are using them. Also, the plaintiff was issued a towel during his incarceration at LCDC., which he could have used to cover himself while he used the bathroom (O'Neill aff. ¶¶ 13-17).

Chaplains that provide services to the inmate population at LCDC are all volunteers. Currently, no chaplain has volunteered to provide Muslim services to the inmate population at LCDC ( O'Neill aff. ¶¶ 10-11). The plaintiff was free to pray with whomever

he wished during times when the inmates were free to move around the housing area. During periods of time when inmate movement is restricted, the inmates are allowed to pray in their sleeping areas (*id.* ¶¶ 23-24).

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365

(4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

### *Individual Defendants*

While the plaintiff has named a number of individual defendants, including the Sheriff of Lexington County, members of the Sheriff's Department, and Ms. Miley, he has not alleged any personal involvement on the part of these defendants. In fact, he did not name any of the individual defendants in the body of his complaint (*see* amended comp. at 3-4). Accordingly, the claims against the individual defendants in their individual capacities should be dismissed. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) ("Having failed to allege any personal connection between [the defendant] and any denial of [the plaintiff's] constitutional rights, the action against him must fail.").

### *Religious Diet*

The plaintiff contends that he did not receive all three meals per day during Ramadan in 2010, which began on or about August 9, 2010, and continued through on or about September 9, 2010. He also alleges that "sometimes I was denied my 3 required meals even after the fasting for Ramadan was over" (amended comp. at 3).

The Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. To succeed on any Eighth Amendment claim for cruel and unusual punishment, a prisoner must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Williams v. Benjamin,* 77 F.3d 756, 761 (4th Cir. 1996). "'[I]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel

and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.'" *Moore v. Winebrenner*, 927 F.2d 1312, 1316 (4th Cir. 1991) (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)).  The United States Supreme Court has noted:

> [A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk of inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. *See* Prosser and Keeton §§ 2, 34, pp. 6, 213-214; *see also* Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680; *United States v. Muniz*, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Farmer*, 511 U.S. at 837-38.

The Fourth Circuit Court of Appeals has held that "inmates must be provided nutritionally adequate food, 'prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it.'" *Shrader v. White*, 761 F.2d 975, 986 (4th Cir. 1985)(internal citations omitted).  It is well-settled that prisoners have a right to adequate food, *see Farmer*, 511 U.S. at 833, but not to food that is tasty or even appetizing. *See Lunsford v. Bennett*, 17 F.3d 1574, 1578-80 (7th Cir. 1994)

9

(a complaint about "cold, poorly prepared beans" did not state an Eighth Amendment claim); *LeMaire v. Maass*, 12 F.3d 1444, 1455-56 (9th Cir. 1993) (temporary Nutraloaf diet did not violate the Eighth Amendment). Indeed, courts have regularly reiterated that prisoners simply cannot expect the "amenities, conveniences, and services of a good hotel." *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988).

As set forth above, the plaintiff requested to participate in Ramadan, during which members of the Islamic faith fast during daylight hours (Taylor aff. ¶¶ 16, 20). Accordingly, LCDC inmates observing Ramadan are not served a meal during the lunch period, but are provided a breakfast meal before sunrise and a dinner meal after sunset (*id.* ¶ 17). The menu served to the inmates observing Ramadan is approved by a licensed dietician to ensure that the menu meets those inmates' caloric and nutritional needs (*id.* ¶ 18).

With regard to his claim that he was denied three meals after Ramadan, the defendants note that this allegation apparently relates to a lunch tray on September 12, 2010, and a dinner tray on September 13, 2010. On those two dates, during the two meal periods at issue, the plaintiff was offered a regular tray[3], which he refused because he had requested to be on the Kosher Diet list. According to the defendants, it appears that, due to a paperwork issue, the plaintiff was not listed on the Kosher Diet list for those two meal periods. Sergeant Taylor corrected that issue on September 13, 2010, which was a Monday (Taylor aff. ¶¶ 28-30).

The plaintiff has failed to establish either the subjective or objective elements of an Eighth Amendment claim for cruel and unusual punishment. Based upon the foregoing, the plaintiff has failed to state a claim that rises to the level of a constitutional

---

[3] Notably, the regular menu at LCDC is also pork free (Taylor aff. ¶ 31).

deprivation. He requested and received the Ramadan meal service, and the two additional meals missed following Ramadan were not the result of a cruel deprivation. Accordingly, this claim is without merit.

*Freedom of Religion*

The plaintiff further alleges that his freedom of religion has been hindered in various ways during his incarceration at LCDC. Specifically, he alleges that that there was no Muslim chaplain or Imam available to inmates at LCDC, he was not allowed to participate in congregational prayers with the other Muslim inmates in his housing area, and that there are no partitions in the bathrooms, causing him to potentially be exposed to the view of other people (amended comp. at 3-4).[4]

Inmates "clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citation omitted). However, the United States Supreme Court has held that "[m]any of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate does not retain rights inconsistent with proper incarceration." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). In assessing the constitutionality of a prison policy or regulation, the Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987), held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."

---

[4]The plaintiff also makes conclusory allegations of discrimination and harassment alleging: "There also has been instances where Muslims have been threatened with all sorts of intimidation tactics like being threatened with lock-up, or being threatened with tazers by multiple officers here at Lexington County Detention Center" (amended comp. at 4). Such allegations are so vague in nature and are such bald, conclusory allegations that they fail to comply with the requirements of Federal Rule of Civil Procedure 8 and therefore should be dismissed. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

11

482 U.S. at 89. The burden of proof under the *Turner* analysis is not on the governmental entity; the burden is on the prisoner to disprove the validity of the prison regulations at issue. *Overton*, 539 U.S. at 132.

Additionally, "[t]he Supreme Court held in *Smith* that a neutral, generally applicable law does not offend the free exercise clause, even if the law has an incidental effect on religious practice." *Hines v. S.C.D.C.*, 148 F.3d 353, 357 (4th Cir. 1998) (citing *Employment Division, Dep't of Human Resources v. Smith*, 494 U.S. 872 (1990)). The court in *Hines* defined a religiously neutral law as one that "proscribes conduct without regard to whether that conduct is religiously motivated or not. If the law makes no distinction between action based on religious conviction and action based on secular views, it is a generally applicable law, neutral toward religion and not violative of the First Amendment." *Id.* Neutral and uniform application of prison rules and regulations that have an incidental effect on religious practices does not violate the First Amendment. *Woods v. Evatt*, 876 F.Supp. 756, 763 (D.S.C. 1995).

With regard to the plaintiff's complaint that the LCDC did not provide him with access to an Imam, the record before the court is that chaplains who provide services to the inmate population at LCDC are all volunteers, and no chaplain has volunteered to provide Muslim services. With regard to the plaintiff's allegations regarding being able to pray with other Muslim inmates in his housing area, the evidence shows that the plaintiff was free to pray with whomever he wished during the times when the inmates were free to move around the housing area. During times when inmate movement was restricted, the plaintiff was free to pray in his sleeping area whenever he chose to do so.

The plaintiff's claim that the lack of partitions in the bathrooms caused him to lose privacy, which was a violation of his religious rights, also fails. "'[P]ersons lawfully arrested on probable cause and detained lose a right of privacy from routine searches of

the cavities of their bodies and their jail cells….'" *Jones v. Murray*, 962 F.2d 302, 306 (4th Cir. 1992) (quoting *Bell v. Wolfish*, 441 U.S. 520, 559-60 (1979)). Additionally, the lack of partitions for security reasons is a neutral decision in terms of religion. All inmates in Echo pod, regardless of their religious affiliations, are subjected to this same security measure. Furthermore, as pointed out above, the plaintiff was free to use his towel to cover himself while he used the bathroom.

Based upon the foregoing, the plaintiff has failed to establish a claim that rises to the level of a constitutional deprivation with regard to his ability to practice his religion during his incarceration at LCDC.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, this court recommends that the defendants' motions for summary judgment be granted (docs. 47, 53).

IT IS SO RECOMMENDED.

January 19, 2012                                    s/ Kevin F. McDonald
Greenville, South Carolina                          United States Magistrate Judge

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 300 East Washington St, Room 239
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).