IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Nathaniel Hallman, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 6:10-2518-RMG |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| Sheriff James Metts, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The Plaintiff brings this *pro se* action seeking relief pursuant to 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 636(b) and Local Rule 73.02(B)(2)(d), D.S.C., this case was referred to the United States Magistrate Judge for all pretrial proceedings. Plaintiff alleges that while he was a detainee at the Lexington County Detention Center ("LCDC"), Defendants violated his Eighth Amendment rights and discriminated against his Muslim faith by not providing him adequate and appropriate meals during and after Ramadan. Plaintiff also claims that his First Amendment rights were violated, alleging that Defendants failed to provide him adequate privacy in the communal restrooms, that Defendants failed to provide an Imam, and that Defendants prevented him from praying with other Muslims. Plaintiff further alleges that intimidation tactics were used by the officers at LCDC. The Plaintiff names the Sheriff of Lexington County and several of his employees as Defendants as well as Trinity Services Group, Inc. and employee Mary Miley. Trinity provides food services at LCDC.

Defendants Miley and Trinity have filed a motion to dismiss or, in the alternative, for summary judgment. (Dkt. No. 47). The remaining Defendants have also filed a separate motion for summary judgment. (Dkt. No. 53). The Magistrate Judge warned Plaintiff of the possible consequences of Plaintiff's failure to respond pursuant to *Roseboro v. Garrison*, 528 F.2d 309

(4th Cir. 1975). (Dkt. Nos. 48 and 54). The Magistrate Judge issued a Report and Recommendation ("R & R") recommending that both Defendants' motions for summary judgment be granted. (Dkt. No. 77). As the Magistrate Judge thoroughly explains in his R & R, Plaintiff was given multiple opportunities to file a response to Defendants' motions for summary judgment and while he filed several documents with the Court, he has not responded to the Defendants' arguments as to the merits of his claims.[1] (*See* Dkt. No. 77 at 2). Plaintiff has also failed to file any objections to the Magistrate Judge's R & R. As explained herein, this Court grants Defendants' motions for summary judgment.

## LAW/ANALYSIS

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). This Court is charged with making a *de novo* determination of those portions of the R & R to which specific objection is made. Additionally, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). This Court may also "receive further evidence or recommit the matter to the magistrate with instructions." *Id.* In the absence of specific objections to the R & R, this Court is not required to give any explanation for adopting the recommendation. *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

Plaintiff alleges that Defendants violated his Eighth Amendment rights by denying him adequate food portions during Ramadan as well as denying him meals after the conclusion of

---

[1] As noted by the Magistrate Judge, Plaintiff did file several documents with the Court including a letter requesting a copy of the complaint (Dkt. No. 56), a motion to amend his complaint (Dkt. No. 58) which was denied by the Magistrate Judge (Dkt. No. 61) and a motion to show cause (Dkt. No. 66) in which Plaintiff appears to contest Defendants' arguments that Plaintiff has not exhausted his administrative remedies. Plaintiff moved for an extension of time to respond to Defendants' summary judgment motions on September 18, 2011 (Dkt. No. 68), which the Magistrate Judge granted in part, allowing Plaintiff until October 12, 2011 to respond to the summary judgment motions. (Dkt. No. 71). Plaintiff has since not filed any response or objection with the Court.

Ramadan. In order to succeed on any Eighth Amendment claim, the prisoner must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). Plaintiff requested meals served in accordance with Ramadan, during which observers do not eat during daylight hours and thus LCDC only provides breakfast and dinner to participants. (Dkt. Nos. 53 at 5-6 and 53-2 at 3). To account for the omitted lunch meal, extra half portions are included with the breakfast and dinner meals, which provide for sufficient caloric intake as prescribed by the National Academy of Sciences - National Research Council. (Dkt. Nos. 47-1 at 8 and 47-2 at 6-7). Plaintiff also claims that he was denied three meals after the conclusion of Ramadan. Defendants assert that on two occasions on September 12 and 13, 2010, Plaintiff was offered a regular tray[2], which he refused because he had requested that he be placed on the Kosher Diet list. Defendants noted that this was due to a clerical error, which they corrected promptly. (Dkt. Nos. 53-1 at 6 and 53-2 at 4).

It is "obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct" prohibited by the Eighth Amendment. *Moore v. Winebrenner*, 927 F.2d 1312, 1316 (4th Cir. 1991)(quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Because neither of these claims show that Plaintiff was deprived of a basic human need that was sufficiently serious nor that any of the Defendants acted with a "sufficiently culpable mind," Defendants' motions for summary judgment are granted as to Plaintiff's Eighth Amendment claims.

---

[2] As the Magistrate Judge notes, Defendants have put forth evidence that all meals at LCDC are pork free. (Dkt. No. 53-2 at 4).

Plaintiff also claims that the Defendants violated his First Amendment right to freedom of religion.[3] Plaintiff alleges that Defendants failed to provide him adequate privacy in the communal restrooms, that Defendants failed to provide an Imam or Muslim chaplain, and that Defendants prevented him from praying with other inmates in his housing area.[4] In addition to a First Amendment claim, Plaintiff's complaint could be construed to bring a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a). Even if a *pro se* prisoner does not explicitly mention the statute, "a prisoner who does not plead a RLUIPA violation specifically, but does allege unconstitutional restrictions on religious practice states a claim under the statute." *Ortiz v. Downey*, 561 F.3d 664, 670 (7th Cir. 2009).

RLUIPA provides in part that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution. . .even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1; see *Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005)("We do not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety."). Under RLUIPA, "Government" is defined as a "State. . .or other governmental entity created under the authority of a State" and "any other person acting under color of State law." 42 U.S.C. § 2000cc-5(4)(A). Thus, officers of LCDC would fall within that definition. *Smith v. Ozmint*, 578 F.3d 246, 250 (4th Cir. 2009). For claims brought under RLUIPA, "a substantial

---

[3] The Court notes that Plaintiff has not exhausted his administrative remedies with respect to his First Amendment claims as there is no evidence before the Court that Plaintiff filed a grievance with LCDC regarding the same. Thus, while the Court could dispose of the remainder of Plaintiff's claims on procedural grounds, the Court addresses them on the merits herein.

[4] As the Magistrate Judge notes, Plaintiff's allegations of discrimination and harassment are vague and conclusory and thus do not meet the pleading requirements of Federal Rules of Civil Procedure 8. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). As such, these claims are dismissed.

burden on religious exercise occurs when a state or local government, through act or omission, 'puts a substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006)(citing *Thomas v. Review Bd. of Indiana Employment Sec. Division*, 450 U.S. 707, 718 (1981)). The Fourth Circuit noted in *Lovelace* that "the First Amendment affords less protection to inmates' free exercise rights than does RLUIPA." *Lovelace*, 472 F.3d at 199-200.

Although Plaintiff's claims could reasonably be interpreted as arising under RLUIPA, the Court need not reach the merits of such a claim. The Fourth Circuit and the Supreme Court have limited damages available under RLUIPA. *See Sossamon v. Texas*, 131 S.Ct. 1561 (2011)(holding that states have sovereign immunity to suits for damages under RLUIPA). In *Madison v. Virginia*, the Fourth Circuit held that a RLUIPA claim for money damages against the state and against an individual acting in his or her official capacity is barred by the Eleventh Amendment. *Madison v. Virginia*, 474 F.3d 118, 132 (4th Cir. 2006); *see also Rendelman v. Rouse*, 569 F.3d 182 (4th Cir. 2009)(rejecting a claim that the spending clause permitted a RLUIPA claim for individual capacity damages but leaving open the question of whether the Commerce Clause would authorize individual capacity damages actions.). Thus, Plaintiff may proceed only to the extent that he is seeking non-monetary relief. *Lovelace*, F.3d at 193-94.

Plaintiff has not asked for injunctive relief relating to LCDC, but has asked for either a sentence reduction or money damages in the amount of $2,000,000.00. (Dkt. No. 1-3 at 1). To the extent any of Plaintiff's claims could be construed to request injunctive relief, such claims are mooted. *See Rendelman v. Rouse*, 569 F.3d at 186 ("[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive relief and declaratory relief

with respect to his incarceration there."). As Plaintiff is no longer incarcerated at LCDC, any claims regarding injunctive relief pursuant to RLUIPA are now mooted.

Turning to Plaintiff's First Amendment claims, the Court finds that Defendants are also entitled to dismissal of Plaintiff's free exercise claims under the First Amendment. "Inmates clearly retain protections afforded by the First Amendment. . .including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). Importantly, however, "[m]any of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate does not retain rights inconsistent with proper incarceration." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). The Supreme Court has held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

In *Turner*, the Supreme Court highlighted four factors that should be used in determining whether a prison regulation is reasonable. *Turner*, 482 U.S. at 89. First, "there must be a valid, rational connection between the prison regulation and the legitimate government interest put forward to justify it." *Id.* at 89-90. Second, the Court is to ask "whether there are alternate means of exercising the right that remain open to prison inmates." *Id.* at 90. A third consideration is "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Id.* at 90. Fourth, the Court is to look at "the absence of ready alternatives." *Id.* at 90-91.

Plaintiff alleges that the lack of partitions in the bathroom violate his religious beliefs because as part of his beliefs he is supposed to guard his modesty. (Dkt. No. 13-2 at 4). Defendants have put forth evidence that the reasoning behind this policy is because partitions

could result in blind spots which would create security concerns. (Dkt. No. 53-4 at 3). Plaintiff has been issued a towel and may take it in to cover himself while he uses the restroom facilities. (*Id.*). Defendants note that the officers typically do not enter the bathroom while the inmates are there. (*Id.*). As noted in *Lovelace*, before applying the factors in *Turner*, the Court determines whether a substantial burden has been placed on Plaintiff's beliefs. In this case, there is no evidence that the partition rule "puts a substantial pressure on [Plaintiff] to modify his behavior and to violate his beliefs." *Lovelace*, 472 F.3d at 187, 200.

Plaintiff also claims that he was not allowed or afforded an Imam. (Dkt. No. 13-2 at 4). Defendants assert that all chaplains that provide services to LCDC are volunteers and that currently they do not have a volunteer to serve as a Muslim Chaplain to lead services for the Muslim inmates. (Dkt. No. 53-4 at 2). Plaintiff has not demonstrated to the Court that the lack of a Muslim Chaplin modifies his behavior or violates his beliefs.

Plaintiff alleges that he was not allowed to pray with other inmates in the unit but that every other religious group was allowed to do so, even when it was not their assigned recreation day or night. (Dkt. No. 13-2 at 4). LCDC allows for inmates to pray with other Muslim inmates during times when the inmates are free to move in the housing area, and, when movement is restricted, inmates are free to pray in their sleeping area. (Dkt. No. 53-4 at 4). Plaintiff has not put forth specific allegations regarding LCDC's policies as to group prayer that demonstrate a substantial burden on Plaintiff's First Amendment rights. For the reasons discussed above, the Court grants Defendants' summary judgment motions as to Plaintiff's First Amendment claims and any claims that Plaintiff has arising under RLUIPA.

## CONCLUSION

After a thorough review of the record and the relevant case law, Defendants' motions for summary judgment (Dkt. Nos. 47 and 53) are **GRANTED** and Plaintiff's claims are **DISMISSED**[5] with prejudice.

AND IT IS SO ORDERED.

Richard Mark Gergel
United States District Court Judge

February 13, 2012
Charleston, South Carolina

---

[5] As to any claims against Defendants in their individual capacities as opposed to their official capacities, this Court agrees with the Magistrate Judge that Plaintiff has not alleged any personal involvement nor has he named them in the body of his complaint. As such, to the extent that Plaintiff intended to assert any claims against the Defendants in their individual capacities, such claims are also dismissed. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977).